**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

SHARRON WHITE,

          *Plaintiff*,

    v.

JEH C. JOHNSON, *Secretary of Homeland
Security*,

        *Defendant*.

Civil Action No. 12-1844 (RDM)

---

**<u>MEMORANDUM OPINION</u>**

    Sharron White is a contracting officer for U.S. Customs & Border Protection ("CBP").

She was hired in 2009 at the GS-13 level on the federal pay scale, but her position was classified

as a "career ladder" position—that is, White was eligible to be promoted to the GS-14 level after

one year in the position.  White's supervisors declined to promote her to the GS-14 level after

one year, and declined again the subsequent two years.  But they promoted a male contracting

officer who was hired shortly before White as soon as he reached the one-year mark.  White

brought an administrative complaint against CBP, alleging gender discrimination.  When her

complaint was denied, she brought this suit, alleging discrimination and retaliation in violation of

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.  The case is now before the

Court on CBP's motion for summary judgment, Dkt. 32.  For the following reasons, the Court

will deny CBP's motion.

## I.  BACKGROUND

    Sharron White was hired on January 4, 2009, as a contract specialist for U.S. Customs &

Border Protection, a component of the Department of Homeland Security ("DHS").  *See* Amend.

Compl. ¶ 4.  The position White obtained was classified as a "career ladder" position—that is, a position that allowed for non-competitive promotion from the GS-13 pay grade to the GS-14 grade.  *Id.* ¶¶ 6, 10, 12.  White was hired at the GS-13 level, but was informed that she would be eligible for a promotion to the GS-14 level after one year.  Dkt. 32-2 at 3 (Def.'s Statement of Material Facts ("SMF") ¶ 13).  This case arises from CBP's decisions in 2009, 2010, and 2011 not to promote White.

White's supervisors at CBP during the relevant period were Robert Abood and Anthony Harvin.  Abood was her immediate supervisor, while Harvin appears to have supervised Abood.  *See* Dkt. 33-4 at 3 (Harvin EEO St.).[1]  White received praise for her work during her first year as a contracting officer.  Abood rated her "successful" in her first annual review in October 2009, Dkt. 40-10 at 2–3 (Pl.'s Opp., Ex. 8), and around that time nominated her for a performance award, citing her "proficient[]" and "professional" work, Dkt. 40-11 at 2 (Pl.'s Opp, Ex. 9).  In the spring of 2010, Abood sent e-mails to Harvin attesting to White's "leadership and management skills," Dkt. 40-14 at 2 (Pl.'s Opp, Ex. 12), and "expeditious" work, Dkt. 40-16 at 2 (Pl.'s Opp, Ex. 14).

Nonetheless, in October 2009, White was denied a promotion to the GS-14 pay grade.  Dkt. 32-2 at 4 (Def.'s SMF ¶ 15).  According to White's declaration, Abood told her that she "need[ed] to work complex procurements" in order to qualify for a promotion.  Dkt. 33-10 at 3 (White EEO St.).  White alleges that she made efforts to obtain more experience working with

---

[1]  The parties have submitted excerpts of CBP's investigative report and depositions conducted in this matter as exhibits to their briefs.  But it is difficult to determine many of the underlying facts in this matter from the limited excerpts provided, and the parties' own accounts are at times inconsistent.  *Compare, e.g.*, Dkt. 32-1 at 13 (explaining that Denise Jenkins-Williams, a CBP employee, "was assigned to work with . . . White but was not her supervisor"), *with* Dkt. 40 at 11 (stating that Jenkins-Williams was White's first supervisor), *with* Dkt. 47-1 at 12 (stating that White was briefly supervised by Jenkins-Williams).

complex procurements and that Abood told her he was "confident [she] would get [her] promotion within a year." *Id.*  But in November 2010, White was again denied a promotion to the GS-14 grade.  *Id.*; *see* Dkt. 32-2 at 4 (Def.'s SMF ¶ 16).  At that time, Abood provided her with a copy of a memorandum from Harvin dated June 2010 stating that White's "current abilities and the type of work performed do not fully meet the standards" of the GS-14 grade. Dkt. 33-11 at 3.  The memo was addressed to White, but was not provided to her before the November 2010 meeting with Abood.  Dkt. 32-2 at 4 (Def.'s SMF ¶ 16).  In October 2011, White was again denied a promotion to the GS-14 grade, this time without receiving a written explanation for the denial.  Amend. Compl. ¶¶ 30–31; Ans. ¶¶ 30–31.

During the same period of time, Brice Winston, a male contract specialist at CBP, was hired and, unlike White, was quickly promoted to the GS-14 grade.  Winston was hired in August 2008, less than five months before White was.  *See* Dkt. 40-9 at 2 (Pl.'s Opp, Ex. 7); Amend. Compl. ¶ 4.  Although he had a lower "warrant level" than White (that is, he was authorized to obligate less money than she was), he initially reported directly to Harvin rather than through an intermediary.  *See* Dkt. 40-13 at 21 (Abood Dep. 46); Dkt. 40-7 at 9 (Winston Dep. 40).  Winston was promoted to the GS-14 pay grade after a year in the position.  Compl. ¶ 34; Ans. ¶ 34.  The record is unclear about the reason for the promotion.  Abood stated in his declaration during the course of later Equal Employment Opportunity ("EEO") proceedings that he "granted" Winston a promotion because "his qualifications and experience met the general standards" for the GS-14 grade, Dkt. 33-12 at 5 (Abood Decl.), and Harvin agreed that Winston was promoted because he met the relevant standards, Dkt. 33-18 at 4 (Harvin Decl.).  But Harvin stated during a deposition in this case, and CBP now concedes, that Winston was promoted automatically after he had been at CBP for a year, that Harvin was unaware of the promotion of

the time it occurred, and that he simply did not "pull . . . back" the promotion because Winston was "performing successfully." Dkt. 40-8 at 8 (Harvin Dep. 67).  When asked if he would have approved the promotion if given the opportunity, he responded that he "probably" would have done so.  *Id.* at 10 (Harvin Dep. 69).

After she was denied promotions in 2009, 2010, and 2011, White filed a complaint with CBP's Office of Diversity and Civil Rights, alleging that CBP's failure to promote her violated Title VII of the Civil Rights Act of 1964.  Compl. ¶ 36; *see* Dkt. 33-2 at 12 (excerpted page of investigative report).  In October 2012, White was again denied a promotion to the GS-14 level, this time by a new supervisor, Susan Hargett-Evans.  *See* Dkt. 40-10 at 15–17 (Pl.'s Opp, Ex. 8); Amend. Compl. ¶¶ 37–38.  White filed a new complaint with CBP, this time alleging retaliation as well as discrimination.  *See* Amend. Compl. ¶ 41.  It appears that the Office of Diversity and Civil Rights investigated White's two complaints and denied them, although no final decision appears in the record.  *Id.* ¶ 42; *see* Ans. ¶¶ 41–42.

In November 2012, White brought the present action, alleging that CBP discriminated against her on the basis of her gender and retaliated against her for raising an EEO claim.  Dkt. 1; *see also* Dkt. 17 (Amend. Compl.).  The matter is before the Court on CBP's motion for summary judgment.  Dkt. 32.

## II.  LEGAL STANDARD

Summary judgment is appropriately granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895–96 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the outcome of the litigation.  *Holcomb*, 433 F.3d at 895; *Liberty Lobby*, 477 U.S. at

248.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."  Fed. R. Civ. P. 56(c)(1)(A).

The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified."  *See Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987).  When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Liberty Lobby*, 477 U.S. at 255; *see also Mastro v. Pepco*, 447 F.3d 843, 850 (D.C. Cir. 2006).  The non-movant's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The non-movant must provide evidence that would permit a reasonable jury to find in its favor.  *See Laningham v. United States Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  If his evidence is "not significantly probative," summary judgment may be granted.  *Liberty Lobby*, 477 U.S. at 249–50.

### III.  DISCUSSION

White's complaint asserts two claims: (1) that CBP discriminated against her on the basis of her gender by failing to promote her and (2) that it retaliated against her for making an EEO complaint.  Dkt. 17 at 7–8 (Amend. Compl.).  The bulk of the parties' briefs turn on the first and primary claim, so the Court will address that claim first.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).  In a case like this one, in which the plaintiff lacks direct evidence of discrimination, courts evaluate Title VII discrimination claims using the burden-shifting framework first set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1113–14 (D.C. Cir. 2016).  First, the plaintiff must establish a *prima facie* case of discrimination.  *Id.* at 1113.  To do so, she "must allege she is part of a protected class under Title VII, she suffered a cognizable adverse employment action, and the action gives rise to an inference of discrimination." *Walker v. Johnson*, 798 F.3d 1085, 1091 (D.C. Cir. 2015).  Once she makes out a *prima facie* case, "the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action." *Wheeler*, 812 F.3d at 1114.  If the employer does so, the burden then shifts back to the plaintiff, who must demonstrate that the employer's stated reason for its actions was in fact pretext for unlawful discrimination.  *Walker*, 798 F.3d at 1092.

In considering a summary judgment motion where the defendant has offered a legitimate reason for the adverse employment action, however, a court must "skip ahead to the third step in the test." *Wheeler*, 812 F.3d at 1114.  In such a case, "the question whether the employee actually made out a prima facie case is no longer relevant and thus disappears and drops out of the picture." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008) (quotation marks and alteration omitted).  "[T]he district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case . . . ." *Id.* at 494 (emphasis in original).  All that remains is the "central question" whether "the employee produced sufficient evidence for a

reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin." *Id.*; *see Walker*, 798 F.3d at 1092.  This is such a case.

CBP argues that it declined to promote White because she was not qualified.  It argues that White "has not been performing work that would warrant promotion to the GS-14 level," and that, although her supervisors have made an effort to provide her with opportunities to do so, she has "resisted . . . complex assignments by asserting that she cannot do the work; by requesting that ongoing work be reassigned; [and by asserting that] she has too much work to do."  Dkt. 32-1 at 2–3.  The "central question" at this stage, therefore, is whether White has produced sufficient evidence for a reasonable jury to find that CBP's asserted nondiscriminatory reason for failing to promote her was not the actual reason and that, instead, CBP intentionally discriminated against her on the basis of her gender.  *See Wheeler*, 812 F.3d at 1114.  For the following reasons, the Court concludes that White has provided sufficient evidence for a reasonable jury to reach that conclusion.

*First*, White has identified a comparator, Winston, who was promoted when she was not. "One way to discredit an employer's justification is to show that similarly situated employees of a different [sex] received more favorable treatment."  *Id.* at 1115 (quoting *Royall v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 548 F.3d 137, 145 (D.C. Cir. 2008)).  White points out that Winston was hired within five months of her; that they were equally qualified; and that Winston was promoted within his first year, while she was not promoted at a similar time, or, for that matter, over the following two years.  White argues that this discrepancy in treatment—as bolstered by a declaration by a former CBP employee who worked with both of them, which

attests that White was "a noticeably better Contract Specialist . . . than Brice Winston," Dkt. 40-

17 at 3 (Pl.'s Opp, Ex. 15)—could lead a reasonable jury to conclude that CBP's proffered

justification for her non-promotion is pretextual, especially given that Abood and Harvin, who

supervised both White and Winston, were both male.

        CBP's primary counterargument is that Winston and White were not "similarly situated."

Dkt. 47 at 6.  But this argument quickly runs aground.  First, the D.C. Circuit has only recently

reiterated that "whether two employees are similarly situated is ordinarily a question of fact for

the jury."  *See Wheeler*, 812 F.3d at 1116.  Here, the differences that CBP identifies between

Winston and White raise more questions than they resolve.  CBP argues, for example, that

Winston and White were not similarly situated because Winston had experience performing

complex procurement work, while White lacked that experience.  *See* Dkt. 32-1 at 1, 3.  But

Harvin testified at his deposition that he did not "remember if [Winston] did anything overly

complex," and that he had no "specific" recollection of any complex procurement that Winston

had handled.  Dkt. 40-8 at 11 (Harvin Dep. 70); *see also* Dkt. 40-13 at 9 (Abood Dep. 23)

(explaining that Harvin "was more involved in" promotion decision than Abood was).  Similarly,

although Abood testified that a "single" complex project was insufficient to advance to the GS-

14 level, *see* Dkt. 40-13 at 14 (Abood Dep. 28), the CBP only identifies one project that Winston

handled that was substantially larger than those handled by White, *see* Dkt. 33-23 at 11 (Abood

Dep. 21).  Likewise, the record is decidedly mixed on the question whether Winston or White

had greater experience or training.  *Compare* Dkt. 33-19 at 3 (Harvin Decl.) (noting that Winston

"was hired from private industry and had gained experience as a contractor . . . for Northup-

Grumman"), *and* Dkt. 33-12 at 3 (Harvin Decl.) (citing Winston's "experience, knowledge,

technical and communication skills"), *and id.* at 5 (Abood Decl.) (similar), *with* Dkt. 32-1 at 19

(describing White's "higher certificates" and "lengthy experience in the procurement field"), *and* Dkt. 40-13 at 20–23 (Abood Dep. 45–48) (positing that Winston "probably" had a lower "warrant level" than White because he had less training than she did). In short, whether White and Winston were similarly situated is a question of disputed fact for the jury. *See Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998) (en banc).

*Second*, CBP's most recent justification for promoting Winston and not promoting White is sufficiently distinct from its first to raise a genuine question of fact as to the authenticity of its justifications writ large. In its motion for summary judgment, CBP argued that the supervisors "believed in good faith that Mr. Winston's performance made him well suited to be promoted from GS[-]13 [to] GS[-]14." Dkt. 32-1 at 19. And in their statements to the EEOC, Harvin and Abood both attested that Winston was promoted because of his experience and qualifications, *see* Dkt. 33-12 at 3 (Harvin Decl.) ("Winston . . . exhibited experience, knowledge, technical and communication skills . . . ."); *id.* at 5 (Abood Decl.) (explaining that Winston was promoted "to GS[-14] because his qualifications and experience met the general standards of the published position description . . . ."), and Abood stated that he "granted" Winston the promotion, *id.* at 5 (Abood Decl.). In contrast, during his deposition, Abood testified that Harvin was more involved than he was in Winston's promotion. Dkt. 40-13 at 9 (Abood Dep. 23). Meanwhile, Harvin testified that he was "unaware" that Winston had been promoted until after the promotion had automatically occurred, Dkt. 40-8 at 7 (Harvin Dep. 66) ("I did not know that that had gone through."), and that he merely allowed that automatic promotion to stand because he believed Winston was "performing successfully," *id.* at 8 (Harvin Dep. 67). CBP has now shifted its focus to this argument, claiming in its reply that White and Winston were not "similarly situated"

because Winston, unlike White, was promoted "automatically upon completion of one year of service at the GS-13 grade level."  Dkt. 47 at 7.

This explanation, once again, raises as many questions as it resolves.  For one, as several courts have observed, an employer's "shifting and inconsistent justifications" are often "probative of pretext."  *Geleta v. Gray*, 645 F.3d 408, 413 (D.C. Cir. 2011) (quoting *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 853 (4th Cir. 2001)).  CBP may well be able to reconcile its initial argument that Abood "granted" Winston a promotion based on his qualifications with its current argument that Winston was automatically promoted and thus underwent a different process than White.  *Cf.* Dkt. 40-8 at 7–8 (Harvin Dep. 66–67) (stating that he "d[id]n't have a problem with [Winston's promotion] because of the fact that [Winston] [wa]s performing well").  But were White's counsel to impeach Harvin or Abood with their prior statements, which suggest a different account for Winston's promotion than the one CBP offers in its reply, a jury could reasonably come to doubt the credibility of both justifications—and thus question whether CBP's legitimate and nondiscriminatory reason was in fact pretext for unlawful discrimination.[2]

*Finally*, White has provided some evidence that calls into question whether CBP officials actually believed her to be unqualified during the relevant timeframe.  *See George v. Leavitt*, 407 F.3d 405, 413–15 (D.C. Cir. 2005) (reversing district court's grant of summary judgment in case

---

[2]  CBP's argument also raises the question why Winston and White were subjected to different promotional assessments—that is, why Winston's qualifications were evaluated only after he had already been promoted and White's were evaluated beforehand.  To be sure, CBP has a ready explanation—Winston's promotion occurred before Harvin was aware that promotions were automatically implemented in the absence of managerial action.  *See* Dkt. 47 at 7 (explaining that "after Winston's promotion went through without managerial involvement, [CBP] took steps to put in place measures [to] assure that promotions did not go through automatically when the managers did not feel the employee's performance warranted promotion").  But, presuming the jury were to conclude that Winston and White were similarly situated, it could question this justification, given its late provenance.

where contemporaneous evidence from co-workers rendered "employer's proffered explanation . . . unworthy of credence" (internal quotation marks omitted)).  CBP relies on the excerpts of the depositions of four employees—Abood, Harvin, Hargett-Evans, and Jenkins-Williams—who all stated that they had concerns with White's performance.  *See* Dkt. 33-23 at 7–9 (Abood Dep. 15–17); Dkt. 33-27 at 8 (Harvin Dep. 29); Dkt. 33-25 at 6 (Hargett-Evans Dep. 69); Dkt. 33-24 at 6–9 (Jenkins-Williams Dep. 43, 45, 49–50).[3]  But the only *contemporaneous* evidence CBP produces is the memo from Harvin to White, dated June 28, 2010, which White says was not provided to her until November—and then only when she saw it in Abood's office.  *See* Dkt. 33-6 at 3; Dkt. 40-27 at 2 (Pl's Opp, Ex. 25).  In contrast, White has produced a number of contemporaneous documents, including positive evaluations, *see* Dkt. 40-10 (Pl.'s Opp, Ex. 8); several e-mails from Abood to others touting her performance, Dkts. 40-14 (Pl's Opp, Ex. 12), 40-16 (Pl.'s Opp., Ex. 14); and the documentation for an award for which Abood nominated her, in which he attested to her performance, her professionalism, and her mentorship skills, *see* Dkt. 40-11 (Pl.'s Opp., Ex. 9).  *See George*, 407 F.3d at 414.  A reasonable jury could, viewing this evidence in the context of the discrepancies described above, conclude that CBP's proffered explanations are no more than *post hoc* justifications.

It is, admittedly, a close question whether White has shown enough to fend off CBP's motion for summary judgment.  She has produced no direct evidence of discrimination and only scattered circumstantial evidence of pretext.  But, as the Supreme Court and the D.C. Circuit

---

[3]  The CBP also relies upon several pages of Hargett-Evans's deposition that it appears to have failed to attach to its motion for summary judgment.  *See* Dkt. 32-1 at 15–16 (referring to "one significant event that would make Ms. Hargett-Evans not recommend Ms. White for promotion" and citing pages 20–25 of Hargett-Evans's deposition, which are not in the record).  But even if CBP had attached the pages, and even if they supported CBP's allegation, the Court would still decline to grant summary judgment to CBP.

have often emphasized, the Court's role at this juncture is not to weigh evidence or to make credibility determinations.  *Wheeler*, 812 F.3d at 1113; *Holcomb*, 433 F.3d at 895; *see also Liberty Lobby*, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").  The question is not whether White has established that CBP discriminated against her, but only whether she has provided sufficient evidence for a reasonable jury to reach that conclusion.  "Viewing the evidence in the light most favorable to [White], and recognizing that determining whether two employees [here, White and Winston] are similarly situated is ordinarily a question of fact for the jury," *Wheeler*, 812 F.3d at 1116 (citation omitted), the Court concludes that she has.

The foregoing discussion concerns Count I of White's complaint, which alleges that she was the subject of sex discrimination when she was not promoted in 2009, 2010, and 2011. White has also brought a second count, Count II, alleging that CBP's failure to promote her in 2012 constituted impermissible retaliation against her for her filing of the initial EEO complaint in November 2011.  CBP's motion for summary judgment purports to address this count of White's complaint as well.  Dkt. 32-1 at 2 ("CBP is entitled to summary judgment on all of Plaintiff's claims.").  But although CBP's motion recites the legal standard applicable to retaliation claims, *id.* at 6–9, it contains no *argument* as to why that standard is not satisfied here, *see id.* at 9–20.  In its reply brief, CBP briefly advances an argument that White cannot make out a retaliation claim, *see* Dkt. 47 at 10–11, and argues that because White "does not address the retaliation claim in her Opposition" it should be dismissed, *id.* at 10.  But it is the CBP, not White, that bears the burden of demonstrating that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if *the movant* shows that . . .

the movant is entitled to judgment as a matter of law." (emphasis added)).  Although CBP

advances some arguments on this issue in its reply brief, it is it is well established in this circuit

that the Court need not "address arguments raised for the first time in a party's reply."  *Jones v.*

*Mukasey*, 565 F. Supp. 2d 68, 81 (D.D.C. 2008); *see also Rollins Envtl. Servs. v. EPA*, 937 F.2d

649, 652 n.2 (D.C. Cir. 1991).  Nor would it be fair to White to grant summary judgment to CBP

on this claim.  While it is true that White did not advance any arguments regarding her retaliation

claim in her opposition, she can hardly be faulted for failing to oppose arguments that were not

made in CBP's opening brief.  The Court will therefore deny CBP's motion with respect to

Count II as well as Count I.

## CONCLUSION

For these reasons, the Court will deny CBP's motion for summary judgment, Dkt. 32.  A

separate Order will issue.


/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  March 25, 2016